UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Josefina Becerra Hernandez, individually and as Trustee for the Estate of Felipe Ledesma Cruz, deceased, and for Rebecca Ledesma Becerra,

Plaintiff,

vs. ORDER

Terry Alan Flor; Central Landscaping, Inc.; Central Turf Farms, and Champion Home Builders,

Defendants. Civ. No. 01-183 (PAM/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 24th day of December, 2002.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Plaintiff's Motion for an Order allowing her to Amend her Complaint so as to add a claim for punitive damages, the Motion of Defendant Central Turf Farms ("Central") for a Protective Order, and to compel the Plaintiff to appear for a discovery deposition, and the Motion of Defendant Champion Home Builders, Co. ("Champion"), for a Protective Order quashing the Plaintiff's Notices for the taking

DEC 24 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

of Trial testimony in Mexico. A Hearing on the Motions was conducted on December 19, 2002, at which time, the Plaintiff appeared by J. Michael Moore, and Keith A. Hanson, Esqs.; Champion appeared by Rob A. Stefenowicz, Esq.; Central appeared by Lisa R. Griebel, Esq.; and the Defendant Terry Allan Flor ("Flor") appeared by Scott B. Lundquist.[1]

For reasons which follow, the Plaintiff's Motion to Amend her Complaint so as to plead a claim for punitive damages is denied, Central's Motion for a Protective Order which compels the Plaintiff to appear for a deposition is granted, and Champion's Motion for a Protective Order that quashes the depositions in Mexico is granted.

## II. Factual Background

In this wrongful death action, the Plaintiff seeks to recover damages, for the estate of her deceased husband, who was killed in a trailer house fire. The Plaintiff's decedent was living in the trailer home, while he was engaged as a migrant farm worker by Central. We understand that the trailer home, which was destroyed in the fire, was manufactured by Champion, was owned by Flor, and was subject to some maintenance by Central, as the employer of the Plaintiff's decedent. To the extent that additional facts are

[1]Champion joins in Central's Motion and, in turn, Central joins in Champion's Motion. Flor also joins in the Motions of both Champion, and Central.

necessary, in order to provide context for the pending Motions, we address those factual matters in our discussion, and resolution, of the parties' respective Motions.

III. Discussion

A. Motion to Amend to Add a Claim for Punitive Damages.

The Plaintiff seeks leave to amend her Complaint so as to plead a claim for punitive damages against Central, and Flor. The Defendants oppose the Motion, on timeliness grounds, and on its merits.

1. Standard of Review. The Plaintiff's Motion to Amend must be considered within the framework of Rule 16(b), Federal Rules of Civil Procedure." Alholm v. American Steamship Co., 167 F.R.D. 75, 77 (D. Minn. 1996). As we have recently reiterated:

> Rule 16(b), Federal Rules of Civil Procedure, provides that a Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." The "good cause" standard is an exacting one, for it demands a demonstration that the existing schedule "cannot reasonably be met despite the diligence of the party seeking the extension." Rule 16(b), Federal Rules of Civil Procedure, Advisory Committee Notes--1983 Amendment; see also, Julian v. Equifax Check Services, Inc., 178 F.R.D. 10, 16 (D. Conn. 1998). It hardly bears mention, therefore, that "carelessness is not compatiBLE with a finding of diligence and offers no reason for a grant of relief." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). Nor does the question of good

> cause turn on the existence or absence of prejudice to the non-moving party. Luigino's Inc. v. Pezrow Cos., 178 F.R.D. 523, 525 (D. Minn. 1998).

Scheidecker v. Arvig Enterprises, Inc., 193 F.R.D. 630, 631 (D. Minn. 2000), quoting Archer Daniels Midland v. Aon Risk Services, Inc., 187 F.R.D. 578, 581-582 (D. Minn. 1999).

Our application of Rule 16(b) is entirely consistent with Eighth Circuit authority.[2] As our Court of Appeals has most recently explained:

> It is true that the Federal Rules are usually liberally construed to permit parties to amend pleadings, add additional parties and to similarly control the pace of litigation. See, e.g., Hopkins v. Saunders, 199 F.3d 968, 974 (8th Cir.1999), cert. denied, 531 U.S. 873, 121 S.Ct. 176, 148 L.Ed.2d 121 (2000); Gray v. Bicknell, 86 F.3d 1472, 1481 (8th Cir. 1996). As regards case management orders, however, the Federal Rules set a less forgiving standard. Federal Rule of Civil Procedure 16(b) specifies that such an order "shall not be modified except upon a showing of good cause and by leave of the district judge." Thus, a moving party must first make the requisite showing. Even then the district court retains discretion as to whether to grant the motion. As a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them. In re Milk Prods. Antitrust Litig., 195 F.3d 430, 437 (8th Cir. 1999), cert. denied sub nom. Rainy Lake One

---

[2]Local Rule 16.3 serves to further reinforce the need for a party to show good cause, when seeking to extend the deadline for amending the pleadings. The Advisory Committee Notes to Local Rule 16.3 explain that the Rule is "* * * intended to discourage modifying pretrial schedules unless good cause has been shown." D. Minn. LR16.3, Advisory Committee Notes.

> Stop, Inc. v. Marigold Foods, Inc., 529 U.S. 1038, 120 S.Ct. 1534, 146 L.Ed.2d 348 (2000).

Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001).

As a consequence, "[w]e doubt that it can be seriously questioned that '[a]dherence to reasonable deadlines is * * * critical to maintaining integrity in court proceedings.'" Alholm v. American Steamship Co., supra at 79, quoting Rouse v. Farmers State Bank of Jewell, 866 F. Supp. 1191, 1199 (N.D. Iowa 1994).

2. Legal Analysis. The applicable Scheduling Order sets August 1, 2001, as the date by which all Motions to amend the pleadings must be submitted to the Court. The Plaintiff did not file the Motion, which is currently before the Court, until December 4, 2002 -- a full year and four months after the exhaustion of the operative deadline. Notwithstanding the starkness, and substantiality of the Plaintiff's delay, he offers nothing to explain, let alone excuse, her lack of due diligence. Rather, she contends that a Motion to Amend, so as to add a punitive damage claim, was filed on April 19, 2002. In truth, however, the Plaintiff appears to have served that Motion upon opposing counsel on the referenced date, but no such Motion was filed with the Court. Of course, even if the Motion had been filed in April of 2002, the applicable deadline for such Motions would still have been rendered the Motion untimely.

Central urges that the Plaintiff was fully aware, prior to the expiration of the pertinent deadline, of the factual predicates for such a Motion. The Plaintiff notes, however, that certain of the depositions were not taken until after the August 1, 2001, deadline. Of course, as we have detailed, our analysis is driven by the Plaintiff's showing of due diligence. Here, on July 6, and on August 7, 2001 -- some seven to eight months after the Plaintiff filed her original Complaint -- she amended her Complaint so as to add additional parties. While we understand that the Plaintiff did not complete certain depositions until September of 2001, she offers no reason for waiting more than another year before seeking to plead a punitive damages claim, nor does she explain what newly discovered evidence necessarily delayed her Motion to Amend.[3]

At the Hearing, the Plaintiff suggested that she did not possess sufficient facts upon which to plead a claim for punitive damages, but the Plaintiff elected not to depose the employees of certain of the Defendants until after the expiration of the deadline for the amendment of pleadings. Given the Record presented,

---

[3]Notwithstanding D. Minn. LR15.1, the Plaintiff failed to attach a copy of her proposed Amended Complaint to her Motion papers. Accordingly, we do not have the required particularization, of her proposed Amended Complaint, that would inform us as to the anticipated factual basis for an exemplary damages claim. Once again, the Plaintiff offers no explanation for this further act of non-compliance.

we find no evidence that, after the taking of those depositions, the Plaintiff sought to amend the operative deadline so as to gain more time for evidence gathering. As we have noted, the evidence identified in the Plaintiff's Motion papers, as supportive of a claim for punitive damages, which consists of deposition transcripts, a report by the State Fire Marshal, and the Coroner's Autopsy Report and Certificate of Death, were available to the Plaintiff as early as September of 2001 -- over a year prior to the filing of her Motion to Amend.[4] Thus, even assuming that good cause existed, in September of 2001, to then excuse the Plaintiff's untimeliness -- a finding we do not imply -- that would still not justify the sadly belated effort, at this time, to amend her Complaint.

Moreover, the Defendants can legitimately complain that the untimely filing of the Plaintiff's Motion, after discovery has been essentially completed, denies the Defendants an opportunity to fully explore the substance of the proposed claim, or requires a

---

[4]The deposition of Defendant Terry Alan Flor was taken on September 21, 2001. See, Plaintiff's Ex. A. The State Fire Marshal's Report of Investigation is dated December 6, 1999. See, Plaintiff's Ex. B. The deposition of Francisco M. Robles, a co-tenant in the trailer, was taken on September 18, 2001. See, Plaintiff's Ex. C. The Autopsy Report and Certificate of Death is dated July 15, 2001. See, Plaintiff's Ex. D. The deposition of Francis Halley, an employee of Central, was taken on September 20, 2001. See, Plaintiff's Ex. E.

further, considerable delay in the scheduling of the Trial, so as to allow the discovery of the full breadth of that claim. We need not, however, exhaustively examine the issue of prejudice for Rule 16(b) is driven by "good cause" on the part of the proponent of a newly formulated claim, and not by a showing of prejudice on the part of the nonmoving party.[5] If an amendment of the pleadings can

---

[5]As we have observed elsewhere:

> We accept that reasonable minds can differ as to the propriety of allowing amendments, so as to plead a punitive damage claim, after the amendment deadline. In our view, such a practice spawns delay, which can be particularly prejudicial to the party facing a newly pled claim for punitive damages. Ordinarily, such a claim is not insurable, at least under Minnesota law, thereby causing any involved insurer to advise of the potential need for separately retained counsel, in order to defend against the request for punitive relief. Newly retained counsel may well regard discovery to be necessary, given the new claims, and we would be hard-pressed to ignore such a request given the dictates of due process. Our view is not altered by the oft-repeated assertion that a punitive damage claim, being fact-dependent, may not be supportable until discovery has been exhausted -- an occurrence which ordinarily transpires after the expiration of the amendment deadline. In truth, rarely do we confront a punitive damage claim, whose predicate facts were not known prior to the filing of the original Complaint, and if, perchance, newly discovered facts should give rise to the claim for punitive damages, then the "good cause" requirement of Rule 16(b), Federal Rules of Civil Procedure, would be

(continued...)

be considered timely under these circumstances, then the good cause showing of Rule 16(b) is an apparition, and our role in facilitating the "just, speedy, and inexpensive" resolution of civil disputes, would be figmental. See, Rule 1, Federal Rules of Civil Procedure. Therefore, having failed to show good cause for her protracted delay in presenting her Motion to Amend, we deny the Motion as untimely, and we do not reach the merits of the Plaintiff's Motion.[6]

B. The Defendants' Motion for a Protective Order Compelling the Plaintiff to Appear for a Discovery Deposition.

The Defendants assert that the Plaintiff's deposition has twice been noted for taking in Minneapolis, Minnesota, but that the Plaintiff failed to appear on either occasion. As a result, the Defendants seek to compel the Plaintiff to appear in Minnesota for

---

[5](...continued)

> satisfied, and leave to amend would be warranted.

Fabio v. Credit Bureau of Hutchinson, Inc., 210 F.R.D. 688, 690 n. 4 (D. Minn. 2002).

As we noted at the Hearing, the foregoing concerns have clear application here, as confirmed during the arguments of the Defendants.

[6]In our experience, there is a direct correlation between a grossly untimely request for leave to assert a punitive damage claim, and the substantive inadequacies of the claim to be asserted. Trial practitioners will not allow a client's claims to founder on the shoals of untimeliness, particularly if the claims are supported by "clear and convincing" evidence of deliberate indifference by the party against whom the claim would be leveled.

her deposition, and they assert that the Plaintiff is a crucial witness on the issue of damages, since she was the decedent's spouse, and a substantial share of the damages claimed rely upon her testimony.[7] In the alternative, the Defendants seek dismissal of the action, or a stay of the proceedings. We first address the Defendants' Motion to dismiss, or to stay these proceedings.

1. The Motions to Dismiss, and to Stay. Under Rule 37(d), Federal Rules of Civil Procedure, which provides that, "[w]hen a party fails to attend her own deposition, * * * a court may on motion make 'such orders in regard to the failure as are just,' and may also impose sanctions." Baraz v. United States, 181 F.R.D. 449, 451 (C.D. Cal. 1998). "Rule 37(b)(2)(C) allows dismissal of an action as a sanction for discovery violations." Id. "However, dismissal is generally appropriate only in 'extreme circumstances,' and upon a showing that the failure to attend the deposition was due to 'wilfulness, bad faith, or fault' on the part of the party against whom the dismissal is sought." Id., quoting Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc., 857 F.2d 600, 603 (9th Cir. 1988). "Disobedient conduct not shown to be outside the control of a

---

[7]Central also moves to compel the Plaintiff to appear at Trial, and seeks a dismissal of her causes of action if she does not, based upon a failure of prosecution. See, Rule 41(b), Federal Rules of Civil Procedure. Quite plainly, the Motion is premature, and we defer a ruling on the Motion to the Trial Court which is properly positioned to address the issue as a Motion in limine.

litigant is sufficient to demonstrate willfulness, bad faith, or fault." Id., citing Hyde & Drath v. Baker, 24 F.3d 1162, 1167 (9th Cir. 1994). Moreover, the Defendants have the burden of demonstrating that the Plaintiff's failure to attend her deposition was the result of wilfulness, bad faith, or fault on the Plaintiff's part. See Baraz v. U.S., supra at 452.

The Plaintiff, who is a citizen of Mexico, contends that her failure to appear at the noted depositions was the result of her inability to gain entry to the United States, from Mexico, where she resides. Although the proof the Plaintiff submits to support her assertion is less than compelling, the Defendants have failed to satisfy their burden of demonstrating that the Plaintiff's absence was the result of wilfulness, bad faith, or fault on the Plaintiff's part, since the Defendants have proffered no evidence to rebut the Plaintiff's assertion that she attempted, in good faith, to lawfully gain entry to this country. As we noted at the Hearing, dismissal is a draconian measure, which should be reserved for the most egregious of discovery offenses. Accordingly, the Defendant's Motion to Dismiss this action is denied and, for like reason, we decline to enter a Stay which would substantially impact the District Court's Trial calendar. Such relief, under the circumstances here, is within the exclusive province of the District Court.

2. The Motion to Compel. "[T]here is a well-recognized, general rule that a plaintiff is required to make [her]self available for a deposition in the District in which the suit was commenced, because the plaintiff has chosen the forum voluntarily, and should expect to appear there for any legal proceedings, whereas the defendant, ordinarily, has had no choice in selecting the action's venue." Archer Daniels Midland Co. v. Aon Risk Servs., Inc., supra at 588, citing General Houses v. Marloch Manufacturing Corp., 239 F.2d 510, 514 (2nd Cir. 1956); Gibbs v. National R.R. Passenger Corp., 170 F.R.D. 452, 453 (N.D. Ind. 1997); South Seas Catamaran, Inc. v. Motor Vessel Leeway, 120 F.R.D. 17, 21 (D.N.J. 1988), aff'd, 993 F.2d 878 (3rd Cir. 1993). "At best, however, this is a general rule which is subject to exception, when the plaintiff can make a compelling showing that its application would impose an unduly heavy burden, or that the overall efficiency of the discovery process would be better served by deposing the plaintiff, and its agents, outside of the forum District." Id., citing Federal Practice & Procedure: Civil 2d §2112 at 77-81, and cases cited therein. "In the final analysis, our selection of the forum for a plaintiff's deposition should not be rigidly formulaic for, in the interests of justice, we have 'great discretion in designating the location of taking a deposition,'" id., quoting Thompson v. Sun Oil Co., 523 F.2d 647, 648 (8th Cir. 1975), "and

that discretion must be directed toward 'consider[ing] each case on its own facts and the equities of the particular situation.'" Id., quoting Turner v. Prudential Ins. Co. of America, 119 F.R.D. 381, 383 (M.D.N.C. 1988), citing Leist v. Union Oil Co., 82 F.R.D. 203 (E.D. Wis. 1979).[8]

---

[8]Although Mexico is a signatory of the Hague Convention, which generally governs discovery in actions involving foreign nationals, see Vasquez v. Bridgestone/Firestone, 192 F. Supp.2d 715, 724-25 (E.D. Tex. 2001), those Convention procedures are not the exclusive means for conducting depositions of named parties in an action in Federal Court. See In re Meta Systems, 1997 WL 173206 at **2 (Fed. Cir., March 20, 1997)(explaining that "the Hague Convention evidence procedures [a]re not a rule of first resort and in determining whether to proceed thereunder the trial court must consider in each case 'the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective,'" quoting Societe Nationale Industrielle Areospatiale v. United States District Court, 482 U.S. 522, 541 (1987)). Moreover, when a Federal Court has personal jurisdiction over a party, that party "is 'subject to the same legal constraints, including the burdens associated with American judicial procedures, as their American competitors.'" Minnesota Mining & Manufacturing Co., Inc. v. Nippon Carbide Industries Co., Inc., 171 F.R.D. 246, 249 (D. Minn. 1997), quoting Societe Nationale Industrielle Areospatiale v. United States District Court, supra at 540 n. 25.

As we have previously held:

> [W]e find it significant that, in Societe National the Supreme Court did not direct American Courts to accede to the discovery procedures of foreign jurisdictions, even where a District Court was presented with a conflict between the employment of the Federal Rules of Discovery and the Hague Convention's Procedures on Taking Evidence Abroad. Instead, the Court held that a District Court has discretion to make reasonableness deter-

(continued...)

An ability to secure entry into the United States constitutes sufficient reason for the Court to order the taking of a deposition outside the District in which the action is venued. See Dubai Islamic Bank v. Citibank, N.A., 2002 WL 1159699 at *14 (S.D.N.Y., May 31, 2002); Baraz v. U.S., supra at 452. In Dubai Islamic Bank, the Plaintiff objected to the taking of the depositions of its agents in the District in which the action was venued, but the Court rejected the Plaintiff's objections, and reasoned that, "if visas cannot be secured -- after a good faith, diligent, and documented attempt -- the Court will be confronted with a new set of circumstances that would require reconsideration of this decision." Id. There, no suggestion was made that the witnesses could not

---

[8](...continued)

> minations, "based on its knowledge of the case and of the claims and interests of the parties and the governments whose statutes and policies they invoke." Id. at 546.

Minnesota Mining & Manufacturing Co., Inc. v. Nip-pon Carbide Industries Co., Inc., supra at 250.

Here, the Plaintiff does not draw any conflict, between the provisions of the Hague Convention, and our Rules of Procedure, which would preclude a deposition of the Plaintiff in either Mexico, or Minnesota, nor does she identify any principles of international comity which would foreclose a deposition in this District. In exercising "special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may take place [foreign nationals] in a disadvantageous position," we find no legitimacy to any such concerns here. Id. at 249, quoting Societe Nationale Industrielle Areospatiale v. United States District Court, supra at 546.

obtain entry into the United States at the time of the Hearing. See id.

In contrast, in Baraz, the Court took "judicial notice that the relations between the countries of Iran, [where the witnesses resided], and the United States of America do not presently permit the taking of Plaintiff's deposition in person in either Iran or the United States." Baraz v. U.S., supra at 452. Consequently, the Court ordered "that the interests of justice would best be served by allowing Plaintiff to testify in the instant matter via (1) telephonic deposition, and/or (2) written interrogatories." Baraz v. U.S., supra at 452. Further, the Court hinted that if, in the interests of justice, the circumstances mandated the necessity for a deposition, then such a deposition should take place in Iran, saying, "such parties are usually deposed where they reside -- i.e., courts rarely require them to return to the United States to have their depositions taken." Id.

Here, the Plaintiff asserts that the events of September 11, 2001, have dramatically increased the travel restrictions placed on foreign nationals who seek to gain entry to the United States. While this may be true, the relations between the United States, and Mexico, are dissimilar to the relations between Iran and the United States, of which the Court, in Baraz, took judicial notice of the inability for Iranian citizens to garner travel visas to the

United States. In fact, counsel for the Plaintiff has advised the Court, and opposing counsel, in a letter dated December 20, 2002, that the Plaintiff's most recent Visa application has been approved, and that, absent the unexpected, she will be present in this country, and in this State, on December 27, 2002. Accordingly, we grant the Defendants' Motion to take the Plaintiff's deposition, during her stay in this State, and they should logistically arrange to do so with Plaintiff's counsel.

C. Defendants' Motion for a Protective Order to Quash the Plaintiff's Deposition Notices.

On December 5, 2002, the Plaintiff served the Defendants with notices for taking the depositions of the Plaintiff, and of three fact witnesses, which were set to be completed on December 13, 2002, in Mexico. On December 12, 2002, we conducted a Status Conference, in order to preserve the status quo while the parties briefed the issues presented by the deposition notices, and we formalized that ruling in an Order of December 13, 2002.

For reasons that we have previously detailed, the noted deposition of the Plaintiff will be mooted by her appearance in this District, and we need not address that deposition further. In addition, though, the Plaintiff seeks to depose three fact witnesses, who currently reside in Mexico. Unfortunately, in her previous briefing of this issue, the Plaintiff had failed to advance

any authority which would allow us to extend our jurisdiction over such foreign nationals. Inexplicably, these same witnesses were previously present in this State, and were available for deposition purposes, before the expiration of the discovery deadline, but the Plaintiff did not then note their depositions. Now, after discovery has closed, the Plaintiff expresses an interest in doing that which is logistically impractical, if not legally impermissible, by requiring the Defendants to travel to Mexico, in order to take depositions in a foreign nation, and with no apparent regard for the provisions of the applicable Hague Convention. The Plaintiff advances no justification for the extraordinary relief she now seeks, much less a clear recitation of what evidence these witnesses can provide that is not otherwise available to her.[9] We are presented with no cause to warrant the distraction of the opposing parties, and their counsel, only days away from the commencement of

[9]We understand the proposed fact witness depositions relate to other occupants of the trailer house, at the time that the Plaintiff's decedent died. The Record discloses, however, that two other occupants, at the time of the fire, were deposed in September of 2001 -- Ferndando Martinez Cardenas, and Francisco Martinez Robles -- when, presumably, the other witnesses would also have been available for deposition purposes. We are also advised that the same witnesses were available in 2002, when they had returned to this District to perform migrant agricultural work. The Plaintiff has not identified what the proposed witnesses could offer, in the way of evidence, which would not be duplicative of the occupants of the trailer house who have been deposed.

Trial, and we grant the Motion for a Protective Order on the basis of its untimeliness.

Moreover, we have abundant concern over the Plaintiff's compliance with the procedural niceties which attend the depositions of foreign nationals, in foreign jurisdictions. Given the Plaintiff's failure to meaningfully address that issue, at the Hearing on December 19, 2002, we afforded the Plaintiff additional time in which to brief the Court's authority to order parties to conduct fact witness depositions in foreign countries. Of course, Rule 28(b), Federal Rules of Civil Procedure, specifies the method by which depositions of witnesses may be taken in a foreign country. See e.g., In re: Matter of Central Gulf Lines, Inc., 2000 WL 713185, *1 (E.D. La., May 31, 2000).[10] However, the Plaintiff made no mention of this Rule at the Hearing, nor in any of her pre-Hearing submissions to the Court. Rule 28(b) provides as follows:

> Depositions may be taken in a foreign country (1) pursuant to any applicable treaty or convention, or (2) pursuant to a letter of request (whether or not captioned a letter rogatory), or (3) on notice before a person authorized to administer oaths in the place where

---

[10] "The Hague Convention employs a tripartite division of means available for obtaining evidence abroad: notice to appear before an American consulate officer or foreign officer; the designation of a private commissioner; or a letter rogatory," See Pain v. United Technologies Corp., 637 F.2d 775, 789, n. 67 (D.D.C. 1980), cert. denied, 454 U.S. 1128 (1981), and each of these three methods are described in Rule 28(b), Federal Rules of Civil Procedure.

> the examination is held, either by the law thereof or by the law of the United States, or (4) before a person commissioned by the court, and a person so commissioned shall have the power by virtue of the commission to administer any necessary oath and take testimony. A commission or letter of request shall be issued on application and notice and on terms that are just and appropriate. It is not requisite to the issuance of a commission or a letter of request that the taking of the deposition in any other manner is impracticable or inconvenient; and both a commission and a letter of request may be issued in proper cases. A notice or commission may designate the person before whom the deposition is to be taken either by name or descriptive title. A letter of request may be addressed "To the Appropriate Authority in [here name the country]." When a letter of request or any other device is used pursuant to any applicable treaty or convention, it shall be captioned in the form prescribed by that treaty or convention. Evidence obtained in response to a letter of request need not be excluded merely because it is not a verbatim transcript, because the testimony was not taken under oath, or because of any similar departure from the requirements for depositions taken within the United States under these rules.

"The strictures of Rule 28(b) serve to mitigate the dangers inherent in foreign depositions, both in terms of accuracy and identity of deponents and documents, by requiring that the deponent testify pursuant to a letter of request, treaty or convention, or on notice before one authorized or commissioned to administer oaths." Advani Enterprises, Inc. v. Underwriters at Lloyds, 2000 WL 1568255 at *3

(S.D.N.Y., October 19, 2000).[11] Further, Rule 28(b) is couched in mandatory terms and states that '[a] commission or letter of request shall be issued on application and notice on terms that are just and fair." Rule 28(b), Federal Rules of Civil Procedure [emphasis supplied]. Thus, upon the proper application, and in the absence of "some 'good reason,'" we are obliged to render the judicial assistance provided for in the Rule. Bankers Trust Co. v. Bethlehem Steel Corp., 752 F.2d 874, 890 (3rd Cir. 1984).[12]

However, a party moving the Court for the issuance of a commission or letter of request must comply with the requirements of Rule 28(b). See United States v. Ruiz-Castro, 92 F.3d 1519, 1533 (10th Cir. 1996); Advani Enterprises, Inc. v. Underwriters at

---

[11]"The notice and commission procedures are designed primarily for situations where a foreign witness will voluntarily cooperate in testimony or production of documents; the letter of request technique is used when there is a need to employ a foreign court's compulsory powers." Pain v. United Technologies Corp., supra at 789 n. 67.

[12]In 1963, Rule 28(b) was amended and, prior to that amendment, the Rule provided that "[a] commission or letters rogatory shall be issued only when necessary or convenient." See Bankers Trust Co. v. Bethlehem Steel Corp., 752 F.2d 874, 890 (3rd Cir. 1984) ("Bankers Trust I"). Thus, the amendment deleted the words "only when necessary or convenient." As the Court in Bankers Trust I explained, "[a]lthough the Advisory Committee Note does not explain this change, it seems clear that the discretion trial courts formerly had in deciding to issue a commission or letters rogatory has been circumscribed." Id. A denial of a request to invoke a commission, pursuant to Rule 28(b), has been deemed an abuse of discretion. See Bankers Trust Co. v. Weiner, 775 F.2d 545, 547 (3rd Cir. 1985)("Bankers Trust II").

Lloyds, supra at *3; Loucas G. Matsas Salvage & Towage Maritime Co., 1997 WL 102491 at *1 (E.D. La., March 5, 1997), aff'd, 1997 WL 201647 (E.D. La., April 23, 1997). In Ruiz, the Court denied a party's Motion, under Rule 28(b), because the party had "neither referenced any treaties nor did he state that [the witness] would testify 'before' a person authorized to administer oaths as described in Rule 28(b)." See United States v. Ruiz-Castro, supra at 1533. Similarly, in Advani Enterprises, the Court explained that the plaintiff must "provide to this Court a proposal for compliance with Rule 28(b), which will include necessarily a means by which to place the deponents under oath by a person located in [the foreign country]." See Advani Enterprises, Inc. v. Underwriters at Lloyds, supra at *2.

Moreover, in Loucas, the Court determined that depositions, which were proposed to be taken pursuant to Rule 28(b), had to be taken "before" a person authorized to administer oaths in the place where the examination is held." See Loucas G. Matsas Salvage & Towage Maritime Co., supra at *2. There, the deposition had already been taken telephonically, and an oath was administered by a court reporter, who was authorized to administer an oath in the United States, but not in the country in which the witness was located. Id. The Court held that Rule 28(b) required that the

person giving the oath must be "authorized to administer oaths where the examination is held." Id.

At the time of the Hearing, the Plaintiff failed to reference any applicable Treaty, or to provide the Court with a proposal identifying the proper person to administer the necessary oath in Mexico. Moreover, the Plaintiff had not even referenced Rule 28(b). Thus, it was not clear whether the Plaintiff was even requesting the Court to issue a commission, or a letter of request. However, in the letter from Plaintiff's counsel, which is dated December 20, 2002, the Plaintiff does reference Rule 28(b), and cites cases interpreting that Rule, including U.S. v. Ruiz, supra. As such, it appears that the Plaintiff is seeking judicial assistance in some form, but the Plaintiff has failed to specifically inform us whether she is applying to the Court for the issuance of a commission, a letter of request, or both.

Moreover, in the referenced letter, the Plaintiff's counsel acknowledges that depositions in foreign countries are to be taken before a person authorized to administer oaths in that country, and notes that the deposition notices, which were served upon the Defendants, clearly stated that the depositions would be taken before an individual authorized to administer oaths in Mexico, but the Plaintiff does not suggest the identity of the appropriate authority in Mexico. Consequently, the Plaintiff's request for

judicial assistance falls well short of the requirements of Rule 28(b). It is not sufficient for the Plaintiff to merely repeat the language of the Rule, for the Plaintiff must identify, "either by name or descriptive title," the individual before whom the deposition is to be conducted, and who will administer the proper oath. Rule 28(b), Federal Rules of Civil Procedure. The Court should not be placed in the position of ordering the parties to undertake expensive pretrial activities in the absence of assurance that the evidence obtained would be both competent, and foundationally admissible.

Accordingly, even if we were to overlook the Plaintiff's failure to note the witnesses' depositions when they were present in Minnesota, and even if we could conclude that the testimony of these witnesses was critical to the Plaintiff's case, we find that the Plaintiff has failed to properly invoke our assistance, under Rule 28(b), and we grant, therefore, the Defendants' Motion to Quash the notices for the depositions that had been scheduled for taking in Mexico. Again, we are satisfied that, if these witnesses held information, which was not duplicative of that already obtained through discovery, their testimony would have been previously preserved, with the least cost, and expense, for all concerned.

NOW, THEREFORE, It is --

ORDERED:

1. That the Plaintiff's Motion to Amend the Complaint to Add a Claim for Punitive Damages [Docket No. 106] is DENIED.

2. That the Defendants' Motion for a Protective Order Compelling the Plaintiff to Appear in Minnesota for a Deposition [Docket No. 111] is GRANTED.

3. That the Defendants' Motion for a Protective Order Quashing the Plaintiff's Depositions Notices [Docket No. 116] is GRANTED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE