UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Josefina Becerra Hernandez, individually and as Trustee for the estate of Felipe Ledesma Cruz, deceased, and for Rebecca Ledesma Becerra,

Plaintiff,

v.

Terry Alan Flor, Central Landscaping, Inc., Central Turf Farms, and Champion Home Builders Co.,

Defendants.

Civ. File No. 01-0183 (PAM/RLE)

**MEMORANDUM AND ORDER**

---

This case arises from a mobile home fire. Plaintiff Josefina Becerra Hernandez's husband, Felipe Cruz, was killed in that fire. Accordingly, Hernandez has filed claims against the owner of the mobile home, Defendant Terry Alan Flor, and Cruz's employer, Defendant Central Turf Farms ("Central Turf"), for negligence and violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 et seq. Additionally, Hernandez has filed products liability claims against the manufacturer of the mobile home, Defendant Champion Home Builders Co. ("Champion"). Now pending before the Court are the following Motions in Limine: (1) Champion's Motions in Limine (Clerk Doc. No. 147); (2) Central Turf's Motion to Exclude Expert Testimony of Michael O'Hara (Clerk Doc No. 143); (3) Central Turf's Motion to Exclude Expert Testimony of Gene Treviño (Clerk Doc. No. 140); (4) Central Turf's Motion to Exclude Expert Testimony of

FILED JAN 21 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Daniel Rothenberg (Clerk Doc. No. 133); (5) Central Turf's Motion to Exclude Evidence of the Terms and Conditions of Employment of Central Turf Farms' Employees (Clerk Doc. No. 138); and (6) Central Turf's Motion to Exclude All Post-Fire Documentary Evidence of Decedent (Clerk Doc. No. 136). As outlined below, the Court denies the Motions.

In its previous Order, the Court found that Hernandez created questions of fact on eight claims against the three Defendants in this case. Becerra Hernandez v. Flor, No. CIV 01-183, 2002 WL 31689440, (D. Minn. Nov. 29, 2002) First, the Court found that Flor committed negligence per se by violating Minnesota Statutes section 299F.362. The Court further determined that Central Turf was not negligent per se because the pertinent state law only applied to owners, not landlords, actual or constructive, or sublessors, actual or constructive. At trial, however, Hernandez will bear the burden of proof on the issues of causation and damages on this claim. The Court also allowed Hernandez to proceed on her second and third claims, finding that questions of fact remained on Hernandez's AWPA claims against both Flor and Central Turf. Hernandez's fourth claim is against Central Turf alone. While the Court found that Central Turf was not negligent per se, it determined that Hernandez's ordinary negligence claims against Central Turf survived summary judgment. Hernandez's fifth claim is that Champion constructed the home with a defective exhaust fan. Hernandez next claims that Champion used unreasonably dangerous materials to construct the home because some of the materials used exhibit unreasonable levels of combustibility. Hernandez's seventh claim alleges that Champion is liable for using crank-out windows in

the bedroom of the mobile home. Finally, Hernandez's last claim alleges failure to warn against Champion. The Court determined that genuine issues of material fact remained to be resolved on these claims as well.

### A. Expert Witness Testimony

Proponents of expert witnesses must prove the admissibility of the witness's testimony by a preponderance of the evidence, Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001) (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 (1993)), but the trial court has discretion on whether to admit or exclude expert testimony, Miles v. Gen. Motors Corp., 262 F.3d 720, 724 (8th Cir. 2001). Under Federal Rule of Evidence 702, a witness is qualified to testify as an expert on the basis of the witness's knowledge, skill, experience, training or education. See Miles, 262 F.3d at 724. Once a witness qualifies as an expert, the district court has the obligation to act as a "gatekeeper," screening the expert's testimony to ensure that it "is not only relevant but reliable." Id. (citing Daubert, 509 U.S. at 589). Further, the testimony should assist the trier of fact, and courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility. Clark v. Hendrick, 150 F.3d 912, 915 (8th Cir. 1998); see also Arcoren v. United States, 929 F.2d 1235, 1239 (8th Cir. 1991) (noting that Rule 702 clearly "is one of admissibility rather than exclusion") (quoted in Lauzon, 270 F.3d at 686).

To determine whether proffered expert evidence satisfies the standard of reliability, the Court must ascertain whether such evidence is "ground[ed] in the methods and

procedures of science." Daubert, 509 U.S. at 590. Daubert provides a number of nonexclusive factors for courts to apply in making admissibility determinations: (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory has been generally accepted. Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 297 (8th Cir. 1996) (paraphrasing Daubert, 509 U.S. at 593-94).

In this case, six experts' testimonies are challenged. The Court rules that all six meet the standards of reliability set forth in Daubert. The objections merely undermine the weight of the testimony. Moreover, except as set forth below, the expected testimony satisfies the definition of relevance found in the Federal Rules of Evidence.

**1. Dr. Robert Brady Williamson**

The Court's previous Order drew distinctions between three components of Dr. Williamson's testimony. At that time, the Court only excluded one of the three aspects of this case to which Dr. Williamson was expected to testify: that in his opinion, but for the rapid spread of the fire, Cruz could have escaped from the mobile home on the morning of the fire. The Court ruled that Dr. Williamson could testify generally about the flammable nature of the building materials used to construct the mobile home and that he could give his opinion concerning how the use of certain building materials can quicken the spread of a given fire. In its Motion, Champion misstates the Court's previous ruling. It argues that the Court should exclude the entirety of Dr. Williamson's testimony because it already excluded

the relevant portions of it, namely his ultimate conclusion concerning causation. However, in its previous Order, the Court permitted Dr. Williamson to testify to causation by allowing his testimony on the general combustibility of the building materials and the effect certain materials have on the pace with which a given fire may spread.

Champion also contends that the Court should exclude the 1978 National Bureau of Standards Report relied on by Dr. Williamson in making his expert opinion. Champion draws distinctions between the instant case and the fires studied in the 1978 Report. As a result of these differences and Dr. Williamson's reliance on the 1978 Report, Champion concludes that Dr. Williamson's findings are unreliable. The Court disagrees. The kind of fact-specific distinctions that Champion draws affect the weight of the testimony and are better suited for cross-examination than for pretrial determination.

**2. Dr. Robert A. Schroeder**

Champion also argues that the Court should exclude the opinions numbered four, five, and six in Dr. Schroeder's Report. It contends that numbers four and six lack sufficient scientific bases and that number five lacks foundation and does not satisfy the requirements of Rule 403. The Court will allow Schroeder to testify to all three opinions. First, Champion attacks the reliability of opinion number four because Schroeder did not conduct any tests, do any fire modeling, and did not address any changes that had been made to the mobile home since its initial construction. Schroeder's opinions comport with the generally accepted theories of fire causation, which have been tested, published, and subject to peer review.

Likewise, Schroeder's opinion number six survives the challenge brought by Champion. Expert testimony concerning feasible alternatives in products liability cases is not inherently inadmissible, as Champion suggests. Finally, Champion objects to the inclusion of Schroeder's opinion number five, which states that Champion was well aware of combustibility concerns with materials used in constructing walls, ceilings and cabinets. Schroeder may opine about general knowledge in the industry. He is also permitted to make conclusions about what Champion itself was aware of, based on the extent to which the industry held certain knowledge in common. Therefore, the Court denies Champion's request to exclude these aspects of Schroeder's testimony.

**3. Michael O'Hara**

Michael O'Hara is expected to testify regarding codes and standards that the mobile home allegedly violated. First, Central Turf challenges the admission of this testimony to the extent that it concerns the interpretation of then relevant law. At trial, the Court will exclude all testimony by O'Hara that purports to interpret the law. Second, Central Turf questions the relevance and reliability of O'Hara's computer modeling. More specifically, Central Turf questions the relevance of O'Hara's expected testimony that had the trailer been equipped with an operable smoke detector, all occupants could have escaped before the fire caused life-threatening temperatures in the mobile home. As Central Turf points out, Cruz did not die from life-threatening temperatures, but from smoke inhalation. Thus, Central Turf argues that the only relevant computer model would calculate the time it would take for the fire to

generate lethal levels of smoke and whether an operable smoke detector could have alerted the occupants and allowed their escape before the smoke reached lethal levels. Central Turf challenges four assumptions made by O'Hara in his computer modeling, arguing that these assumptions affect the reliability of O'Hara's testimony. It contends that the four assumptions are either unsupported by the facts in the record or contrary to them. The Court finds that none of the assumptions made by O'Hara is beyond the jury's understanding. In addition, O'Hara's methods and his actual application of those methods are reliable, even if his assumptions do not have explicit basis in the record. Therefore, the Court finds that Central Turf's objections to this aspect of O'Hara's testimony impugns the testimony's weight rather that its admissibility. Central Turf can attack the credibility of O'Hara's assumptions on cross-examination.

Finally, Central Turf claims that the cited code violations lack relevance because they do not apply to Central Turf as a matter of law. The Court previously ruled in favor of Central Turf's Motion for Summary Judgment on Hernandez's negligence per se claims. The alleged state-law violations do not support a claim in negligence per se because the state laws cited do not apply to Central Turf. However, the Court also determined that questions of fact remained on Hernandez's AWPA and negligence claims against Central Turf. Accordingly, because the Court previously dismissed Hernandez's negligence per se claim against Central Turf, O'Hara's testimony concerning violations of state law are not admissible for the purposes of proving that claim.

**4. Dr. Gene Treviño**

Champion and Central Turf challenge Treviño's testimony because they contend that the valuation of emotional services to which Treviño plans to testify is not a proper topic for expert testimony. Central Turf argues that Treviño, an economist, is not qualified to testify as to the dollar value of emotional services that Cruz provided and would have provided to his family. Central Turf also objects to Treviño's calculation of Cruz's expected earnings because it assumes an increasing income level and is based on the Cruz family's plans to move to the United States in 2000. The Court notes that determining damages amounts in a wrongful death case frequently requires a valuation in dollars of the loss of relationship or companionship. See, e.g., Coolidge by Coolidge v. St. Paul Fire & Marine Ins. Co., 523 N.W.2d 5, 6-7 (Minn. Ct. App. 1994); Ferguson v. Orr, 427 N.W.2d 732, 734-35 (Minn. Ct. App. 1988). In many respects, every attempt to calculate damages in a wrongful death suit hinges upon great speculative leaps and assumptions. The Court denies Defendants' Motions to exclude Treviño's testimony in its entirety and will determine at trial whether his testimony lacks the requisite foundation or is admissible. Moreover, the assumptions concerning Cruz's income level and his family's plans to relocate do not render the testimony unreliable. Therefore, the Court will allow this testimony, and Defendants can make their objections through cross-examination.

**5. Dr. Daniel Rothenberg**

Central Turf objects to the testimony of Dr. Rothenberg on Rule 403 grounds and

argues that it is irrelevant. Rothenberg has expertise in the experience of migrant workers in the United States. While his testimony is based on general knowledge of the lives of migrant farmworkers, it relates specifically to Cruz and will assist the jurors in understanding a world about which they likely have very little accurate information. Such testimony is relevant because it has at least some tendency to make the existence of material facts more probable than they would otherwise be. For instance, the testimony would enable jurors to make crucial decisions concerning the nature of the complex employment-plus relationship between Cruz and Central Turf. The testimony also has relevance because it may assist the jury in its determination of the degree of control that Central Turf exercised over Cruz. Finally, the testimony is relevant to the extent that it may assist the triers of fact in their determination of whether Central Turf owed Cruz a duty of care. In addition, the Court expects that the testimony of Dr. Rothernberg will have very little prejudicial effect. Central Turf can easily draw the jurors' attention to any differences between the generalities that Rothenberg might explain and the specific circumstances of this case. The Court will admit Rothenberg's testimony for the relevance it has and for the purpose of determining the issues of control and duty. At trial, the Court will exclude any aspects of Dr. Rothenberg's testimony that fail to meet the standards of relevance and Rule 403.

**6. Erik Anderson**

Champion asks the Court to exclude the entirety of Anderson's testimony, or in the alternative, to limit that testimony. It objects specifically to Anderson's conclusion that the

fire was caused by the buildup of cooking byproducts and poor ventilation. Champion alleges that Anderson performed no tests on the internal components of the vent hood and that his use of the term "most likely" reveals the speculative nature of his testimony. The Court disagrees with Champion's conclusions concerning the reliability of Anderson's testimony and will not limit or exclude portions of his expected testimony at this time.

**B. Terms and Conditions of Employment**

Central Turf argues that the Court should exclude any evidence concerning the terms and conditions of employment as irrelevant and for having an overwhelming unfair prejudicial effect. Hernandez contends, however, that the wages, hours worked, chances of promotions, benefits, and other terms and conditions of employment are necessary to establish damages. The Court agrees. Because the damages in this case include projected income, the terms and conditions of employment are highly relevant to damages. This relevance outweighs the potential unfair prejudicial effect. While Hernandez will not be permitted to present evidence of the terms and conditions of employment through an expert witness, other witnesses with personal knowledge of the terms and conditions of employment may give lay opinions on this topic.

**C. Explicit Descriptions of Cruz's Death**

Champion requests that the Court exclude photographs and explicit descriptions of Cruz's burned body, as well as any testimony referring to Cruz's shouts, screams, or cries of pain. It argues that admitting the descriptions not only violates Rule 403, but also that

evidence showing Cruz's pain and suffering lacks relevance because this case concerns the wrongful death of Cruz and not his personal injuries. The Court agrees in principal, but nevertheless denies the Motion. At trial, the Court will exclude all descriptions of the circumstances surrounding Cruz's death, whether documentary exhibits or testimony referring to Cruz's shouts and screams, to the extent that these descriptions fall short of Rule 403's requirements.

**D. Remaining Disputes**

In essence, Champion transmutes two Motions in Limine into motions to dismiss for failure to state a claim. Champion argues that the Court should dismiss Hernandez's claim relating to the alleged inability to escape from the windows. Champion provides evidence to show that the bedroom windows slid open, as opposed to the crank method described by Hernandez. Second, Champion argues that the Court should dismiss Hernandez's failure to warn claim because it argues Plaintiff failed to allege a prima facie case. Even assuming the Motions are proper at this stage, the Court denies them. For the purposes of these Motions, the Court takes all facts alleged by the nonmoving party as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe any reasonable inferences that can be drawn from the facts in favor of the nonmoving party, as well. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A court will grant a motion to dismiss only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." Id.; see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Both of Champion's Motions turn

on factual findings that must be left to the jury. The Court denies both Motions because they fall far short of the requirements of Rule 12(b)(6).

Finally, Champion objects to the testimony of an eyewitness, Pabelo Hernandez, on the grounds that it only recently received notice of Plaintiff's intention to call him as a witness. It argues that Plaintiff should not be allowed to conduct "trial by surprise" in this manner. Because Plaintiff amply notified Defendants of its intention to call Hernandez as a witness, the Court will allow Hernandez to testify in this case.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Champion's Motions in Limine (Clerk Doc. No. 147) and Supplemental Motion in Limine are **DENIED** without prejudice; and
2. Central Turf's Motions in Limine (Clerk Doc. No. 133, 136, 138, 140, 143) are **DENIED** without prejudice.

Dated: January 16, 2003

Paul A. Magnuson
United States District Court Judge